THE PEOPLE OF THE STATE OF NEW YORK ex rel. NELSON H. SADLEMIRE, Relator, *v.* JOSEPH F. TINNEY, as Commissioner of Public Safety of the City of Watervliet, County of Albany, New York, Respondent.

Third Department, November 13, 1918.

**Municipal corporations — certiorari — review of proceedings of commissioner of public safety removing chief engineer of fire department — relator reinstated.**

On certiorari to review the proceedings of the commissioner of public safety of the city of Watervliet in removing the chief engineer of the fire department of said city, it appeared that said engineer, who had faithfully and satisfactorily performed his duties as such for eleven years, refused to comply with the commissioner's request that he resign in order that the position might be filled by a person of the same political faith. Charges against the relator examined and *held*, to be trivial, and that his dismissal was in violation of law, and that he should be reinstated.

The power of the commissioner of public safety to remove the chief engineer was not an arbitrary one.

CERTIORARI issued out of the Supreme Court and attested on the 6th day of May, 1918, directed to Joseph F. Tinney, as commissioner of public safety of the city of Watervliet, commanding him to certify and return to the office of the clerk of the county of Albany all and singular his proceedings had in dismissing the relator from the position of chief engineer of the fire department of the city of Watervliet.

*George J. Schneller,* for the relator.

*Chester Wood, Corporation Counsel* [*S. W. Russell* of counsel], for the respondent.

LYON, J.:

The relator was the chief engineer of the fire department of the city of Watervliet. He had joined the volunteer department in 1881 as a member of Kelly Hose. He had obtained an exempt fireman's certificate in 1892, and had received an honorable discharge as a volunteer fireman. He had been appointed chief engineer in 1907 by the board of fire commissioners, and had been continued in office by their successor. The respondent was the commissioner of public safety of the city of Watervliet, and had taken office January 1, 1918. On January 9, 1918, he wrote relator requesting his resignation as chief engineer. The relator called on the tenth, as he testifies, and was told that he should not blame the commissioner of public safety; that the mayor and the party wanted petitioner's resignation in order that the position might be filled by a person of the same political faith. He then saw the mayor about the letter, and the mayor said the request for resignation was mailed without his approval. The relator refused to resign, stating that he was an exempt fireman, and was entitled to the protection of the laws of the State against removal from public office. On February first charges, some twelve in number, were made against him and he was tried before the commissioner of public safety and was convicted and removed from office. He thereupon brought this proceeding to review the determination of the commissioner of public safety.

One of the alleged disobeyed rules of the department provided: " After every fire the chief engineer shall prepare a report for the Commissioner of Public Safety, setting forth the location of the fire, the time of its occurrence,  * * * the amount of hose used at each fire and the entire amount used throughout the year.  * * *  He shall also submit at the same time  * * *  an inventory of all the property of the fire department; said report to be submitted to the Commissioner of Public Safety in January."  The report was

made on the last day of the month, December thirty-first, of the fires which had occurred during that month. The chief states that it has been his custom during the whole eleven years under the direction and approval of the commission in charge to report the fires at the end of each month. One charge was for drawing coal with one of the trucks of the department on Sunday. It appears that the captain of one of the hose companies was out of coal, and that there was danger of freezing, which would injure his apparatus, as well the heating system in the house. The commissioner of public safety was aware of the shortage on Friday, and the mayor was told of it on Saturday morning, and had promised to get it but did not. The mayor told the driver of the truck to borrow coal and ordered the coal dealer to let the driver have coal. The mayor testified that he told the chief to use his best judgment, and that he approved of what he did. Another charge is that for two or three days they were short of coal, oats and blankets. The evidence shows that these were to be furnished by the commissioner of public safety. The chief testified that the commissioner of public safety or the mayor always looked after those things. One charge related to the water pressure which at times was as low as thirty pounds when the chief directed that the horses be taken out with the steamer first and come back and get the hook and ladder. This was good judgment. Another charge related to allowing two bottles which belonged to the chemical company to remain uncharged. The evidence showed that this occurred on Saturday, and on Monday the commissioner of public safety and the mayor were advised of it, and that effort was made to obtain bottles which would fit the caps but that owing to the caps being of unusual size it was impossible to get them until January, 1918. Another charge related to allowing the men to bank from one to three feet of snow against one of the doors of the Kelly Hose Company, No. 2, room. The driver testified that he did it to keep the place warm, and had done it for eleven years. The company had but a single horse and wagon, and passed out of another door with the hose cart. When the commissioner of public safety called attention to it the door was banked with a piece of hose. Another charge was of water in the cellar of Protection Hose house. The evidence

showed that water had come into the cellar every year for twenty years to the knowledge of the commissioner. Another charge was that there was no shelter for the exercise wagon. The evidence was that this had existed for two years to the knowledge of the mayor and commissioner of public safety.

The power of the commissioner of public safety to remove the chief engineer was not an arbitrary one. For eleven years the relator had been the chief of the fire department of the city of Watervliet. He had performed the duties of his position with faithfulness and to the satisfaction of the fire commissioners and the commissioner of public safety during all those years. The charges were trivial upon which he was tried. His dismissal was in violation of law and should not be allowed to stand.

The determination should be annulled and the relator reinstated, with fifty dollars costs and printing disbursements to the relator.

All concurred.

Determination annulled and relator reinstated, with fifty dollars costs and disbursements.